**SIGNED THIS: May 12, 2006**

_____
**THOMAS L. PERKINS
UNITED STATES CHIEF BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| STEVEN D. PRYOR, | ) | No. 05-87079 |
| | ) | |
| Debtor. | ) | |

## O P I N I O N

Before the Court is the objection of FORD MOTOR CREDIT COMPANY (FMCC) to confirmation of the Amended Chapter 13 plan filed by STEVEN PRYOR, the Debtor (DEBTOR). A hearing was held on February 13, 2006, and the matter was taken under advisement. The narrow question before the Court is whether the interest rate payable on a secured claim is capped at the contract rate. Both the DEBTOR and FMCC submitted briefs on the issue.

On September 10, 2002, the DEBTOR purchased a new 2002 Ford F150 from Velde Ford for $21,850. The amount financed under the motor vehicle retail installment contract was $20,145.56, payable over a period of 60 months with interest at the rate of 4.9% per annum. The contract was assigned to FMCC.

The DEBTOR filed a Chapter 13 petition on October 14, 2005, and placed a value of $8,000 on the F150 in Schedules B and D. The original plan filed by the DEBTOR provided for payments

of $350 per month for 36 months and proposed to have the Trustee pay FMCC the principal sum of $8,000, plus interest at the rate of 8%. The estimated distribution to unsecured creditors was 1%. On November 2, 2005, FMCC filed a proof of claim in the amount of $11,156.51, plus interest at 8.75%, attaching a copy of the contract and title to the vehicle. FMCC also objected to confirmation of the plan based upon both the value of the vehicle and the proposed interest rate, contending that it was entitled to be paid $11,156.51, plus interest of 9%.

Three days prior to the confirmation hearing scheduled for February 13, 2006, the DEBTOR filed an amended plan, increasing FMCC'S secured claim to $11,123.94, the amount owed on the date of the filing of the bankruptcy, but reducing the rate of interest to 4.9%, as provided for by the contract. The payments to be made by the DEBTOR under the amended plan remained the same but the term of the plan was increased to 52 months. At the confirmation hearing, FMCC objected to the amended plan based on the contract rate of interest, contending that it is entitled to a rate of interest that compensates it for the present value of its claim. The Court took the matter under advisement. After the hearing, the amended plan was noticed to all creditors with an objection date of March 1, 2006. No other objections were filed.

The requirements for confirmation of a Chapter 13 plan are set forth in Section 1325 of the Bankruptcy Code. Pursuant to Section 1325(a)(5)(B)(ii), the Chapter 13 "cram down" provision, applicable where the debtor does not surrender the collateral and the secured creditor does not consent to the plan, the present value of the deferred payments provided for in the debtor's plan must not be less than the allowed amount of the secured creditor's claim.[1] Prior to the Supreme Court's

---

[1] Section 1325(a)(5)(B), as applicable to this case, provides:

[T]he court shall confirm a plan if –
  * * *
  (5) with respect to each allowed secured claim provided for by the plan –

2

ruling in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004), courts had taken divergent approaches in determining the appropriate "cram down" interest rate. The four main approaches were the "cost of funds method," the "presumptive contract rate" method, the "coerced loan" method, and the "formula" method.[2] In addition, a number of courts had treated oversecured and undersecured creditors differently as to the rate of interest to be applied. Reasoning that an oversecured creditor would receive the benefit of its initial bargain if its claim is paid at the rate of interest provided in the original contract, some courts had capped the interest payable on such a claim under a Chapter 13 plan at the contract rate. *In re Carpenter*, 223 B.R. 114 (Bankr.S.D.Ohio 1998); *In re Segura*, 218 B.R. 166 (Bankr.N.D.Okla. 1998).

In *Till*, decided by the Supreme Court in 2004, the Court addressed the proper rate of interest to be applied under Section 1325(a)(5)(B)(ii). Endorsing the formula or "risk plus" approach as best effectuating the purposes of the Bankruptcy Code, the Court explained:

> [U]nlike the coerced loan, presumptive contract rate, and cost of funds approaches, the formula approach entails a straightforward, familiar, and objective inquiry, and minimizes the need for potentially costly additional evidentiary proceedings. Moreover, the resulting "prime-plus" rate of interest depends only on the state of financial markets, the circumstances of the bankruptcy estate, and the characteristics of the loan, not on the creditor's circumstances or its prior interactions with the debtor.

In so ruling, the Court rejected the presumptive contract rate, determining that its application could result in disparate treatment of similarly situated creditors. In illustration, the Court posed the

---

* * *
(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

11 U.S.C. Section 1325(a)(5)(B). As noted, this case was filed on October 14, 2005, on the eve of the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act.

[2]The "coerced loan" rate is described as the rate the creditor would obtain if it were permitted to foreclose and reinvest the proceeds in loans of equivalent duration and risk; the "presumptive contract" rate is the negotiated contract rate, subject to a higher or lower adjustment based upon prevailing market rates; the "cost of funds" rate is the rate equivalent to what the creditor would have to pay to borrow the amount equal to the collateral's value; and the "formula" rate is the prime rate plus an adjustment for risk of nonpayment and inflation.

following hypothetical set of facts:

> [S]uppose a debtor purchases two identical used cars, buying the first at a low purchase price from a lender who charges high interest, and buying the second at a much higher purchase price from a lender who charges zero-percent or nominal interest. Prebankruptcy, these two loans might well produce identical income streams for the two lenders. Postbankruptcy, however, the presumptive contract rate approach would entitle the first lender to a considerably higher cram down interest rate, even though the two secured debts are objectively indistinguishable.

541 U.S. at 478, 124 S.Ct. at 1960. The Court characterized the terms of the parties original contract as "now irrelevant." 541 U.S. at 478, 124 S.Ct. at 1961.

The DEBTOR contends that *Till*'s application is limited to cases involving a cram down. Noting that his plan proposes to pay FMCC the full amount of its claim at the contract interest rate, the DEBTOR suggests that application of a higher interest rate would result in a windfall to FMCC.[3] FMCC argues that the "prime plus" formula for determining the interest rate set forth in *Till* applies to all cases, without regard to the interest rate set forth in the original contract.

In this Court's view, the Supreme Court's ruling in *Till* is clear that the prime rate as adjusted for risk applies in all cases involving cram down in a Chapter 13 plan, including those cases involving a below market contract rate of interest, whether the creditor's claim is oversecured or undersecured. The flip-side of the argument made here by the DEBTOR was recently rejected by the court in *In re Wright*, 338 B.R. 917 (Bankr.M.D.Ala. 2006), a case addressing *Till*'s application to a post-BAPCPA Chapter 13 case. Rejecting the creditor's contention that *Till's* interest rate formula, applicable only in cram down cases, did not apply because its claim was fully secured, the court pointed out that the creditor was confusing the term "cram down" with the term "strip down," explaining:

---

[3] While an oversecured creditor is entitled to be paid interest at the contract rate from the date of filing of the petition until the date of confirmation, *In re Milham,* 141 F.3d 420, 423 (2nd Cir. 1998), the interest the creditor is entitled to be paid postconfirmation is an independent issue.

"Cram down" is a term that refers to confirmation of a chapter 13 plan over the objection of the holder of a claim. *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 957, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). The term "strip down" refers to the bifurcation of a claim into its secured and unsecured components under 11 U.S.C. § 506. The secured claim is said to be stripped down to the value of the collateral.

Although *Till* interpreted 11 U.S.C. § 1325(a)(5)(B)(ii) in a case involving the strip down of a secured claim, the statute itself is broader and applies to all cram down cases. Hence, the decision in *Till* is not confined merely to those cases where the value of the collateral is less than the creditor's claim. Rather, *Till* applies in all chapter 13 cases which are being confirmed over the objection of a secured creditor irrespective of the value of its collateral in relation to the amount of its claim.

Further support for the universal application of *Till* is found in the many post-BAPCPA cases rejecting the arguments of secured creditors with purchase money security interests in vehicles acquired by a debtor for personal use within 910 days prior to the bankruptcy filing, that they are entitled to receive interest at the contract rate. *In re Brown*, 339 B.R. 818 (Bankr.S.D.Ga. 2006); *In re Fleming*, 339 B.R. 716 (Bankr.E.D.Mo. 2006). Any plan that modifies a secured creditor's rights over the creditor's objection is a cram down that triggers the application of Section 1325(a)(5)(B)(ii). A plan proposing to pay a secured creditor's claim on an unmodified basis, in full according to the terms of the contract by direct payments from the debtor to the creditor, is not a cram down. In that event, the creditor would be stuck with the contract rate of interest no matter how low it was. Here, however, although FMCC'S claim is not being stripped down, the payment stream is being modified. That is enough to trigger the present value requirement of Section 1325(a)(5)(B)(ii).

Accordingly, this Court holds that FMCC is entitled to receive the present value of the agreed amount of its secured claim – determined in accordance with *Till*. FMCC'S objection to confirmation is allowed and confirmation of the plan is denied. The DEBTOR will be given 14 days to file a second amended plan that proposes to pay FMCC a rate of interest based on the "prime

plus" formula method.

      This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###